IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 21, 2022

**STERLING CARTER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2017-D-2460    Steve R. Dozier, Judge**

_____

**No. M2021-01093-CCA-R3-PC**

_____

The Petitioner, Sterling Carter, pleaded guilty to aggravated sexual battery, and the trial court imposed a twenty-two year sentence to be served in the Tennessee Department of Correction. The Petitioner filed a post-conviction relief petition, alleging that he had received the ineffective assistance of counsel and that his guilty plea was involuntary. After a hearing, the post-conviction court denied relief, finding that the Petitioner had not proven his allegations by clear and convincing evidence. On appeal, the Petitioner maintains his arguments. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Sterling Carter.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Amy M. Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Procedural History and Facts**
**A. Procedural History**

On November 13, 2017, a Davidson County grand jury indicted the Petitioner for three counts of rape of a child and one count of aggravated sexual battery. The Petitioner pleaded guilty on October 17, 2018, to one count of aggravated sexual battery as a lesser-included offense of rape of a child in Count 1 of the indictment. Pursuant to the plea agreement, the trial court imposed a twenty-two year sentence and the remaining counts of the indictment were dismissed.

## B. Guilty Plea Submission Hearing

At the guilty plea submission hearing, the Petitioner confirmed that he was not under the influence of drugs or alcohol and was not suffering from any mental health issues. The trial court reviewed the charges against the Petitioner and the potential sentences. The Petitioner stated that he understood the charges and had discussed them with his attorneys ("Counsel" and "Co-counsel"). The Petitioner testified that he was satisfied with Counsel and Co-counsel's representation. The trial court then reviewed the plea agreement, which was an amended charge to aggravated sexual battery and a twenty-two year sentence to be served at 100%. The trial court reviewed the Petitioner's constitutional rights and the rights he was waiving to enter a guilty plea. The Petitioner affirmed his understanding and identified his signature on the plea agreement. The Petitioner denied that anyone was forcing him to enter the plea or that any promises, outside of the agreement, had been made to him.

The State recited the following facts in support of the trial court's acceptance of the Petitioner's guilty plea:

On August 20th of 2017, the child victim . . . was helping [the Petitioner] clean out an office building . . . . [The Petitioner] and [the victim] were cleaning an upstairs bathroom. [The victim] was standing on the counter cleaning a mirror when the [Petitioner] pulled her pants and underwear down to her[] knees and started touching her thighs with his hands. He picked [the victim] up and threw her on the couch where he continued to touch her body including her vagina with his hands. He then took out his penis, put it in inside [the victim]'s vagina.

[The Petitioner] eventually stopped and gave [the victim] her clothing. The [Petitioner] then told [the victim] to finish vacuuming and they finished cleaning the office and went home.

Following the State's recitation, the Petitioner entered a plea of guilty. The trial court accepted the plea, entered the agreed sentence, and the remaining charges against the Petitioner were dismissed.

## C. Post-Conviction Hearing

The Petitioner, *pro se*, timely filed a petition for post-conviction relief, alleging ineffective assistance of counsel and that his guilty plea was involuntary. The post-conviction court appointed an attorney to represent the Petitioner, and an amended petition

was filed. The Petitioner alleged, as relevant on appeal, that Counsel was ineffective because he failed to communicate adequately with the Petitioner in order to develop a proper defense strategy and that his guilty plea was involuntary. At a hearing on the petition, the parties presented the following evidence:

The Petitioner testified that he met with Counsel six or seven times before his guilty plea hearing. He agreed that during those meetings Counsel explained the charges and the State's evidence against the Petitioner. The Petitioner clarified that their discussion about the State's evidence was "extremely brief" and that Counsel did not review the discovery with him.

The Petitioner recalled one night when Counsel brought a laptop computer to jail to show the Petitioner his recorded interview with the detective. Counsel had difficulty playing the recording but once he was able to do so, the Petitioner was still unable to hear the audio. The Petitioner read the transcript of the interview and told Counsel that the transcript was not accurate. Counsel told the Petitioner not to worry about it because the interview was going to be suppressed.

The post-conviction court asked the Petitioner what he meant when he said the transcript was not accurate, and the Petitioner explained that he made statements to the detective that were not in the transcript and that there were statements in the transcript that were "completely mis-worded." As an example, the Petitioner testified that, during the interview, he twice told the detective "you don't care about victims" and that those statements were not in the transcript. The Petitioner agreed that Counsel tried to suppress the interview but that the trial court had ruled the recorded interview was admissible.

The Petitioner testified that the victim indicated to him that she had been raped but would not disclose who had raped her. The Petitioner urged the victim to tell someone and seek help, but the victim refused. Desperate to help the victim, the Petitioner went to the police and disclosed that he had engaged in sexual conduct with the victim in order to instigate an investigation. He stated that he believed his name would be cleared during the investigation and that the real perpetrator would be identified and arrested.

The post-conviction court read portions from the police interview transcript, and the Petitioner pointed out that he only responded to the detective's questions about specific sexual conduct. He noted that the detective suggested specific behavior in the question, and the Petitioner merely agreed. The Petitioner then stated that the transcript was "totally wrong." The post-conviction court responded, "the DVD was introduced as well." The Petitioner maintained that none of his statements to the detective during the interview were true. He stated that he was only trying "to help [the victim] out." He said he was certain

that the physical evidence would show that he never touched the victim, so he had not been concerned about his admissions during the police interview.

About the plea agreement, the Petitioner said that he had fifteen to twenty minutes to consider the State's offer of twenty-two years. Counsel told him it was "a good deal" and that his "recourse" after pleading was "a postconviction thing." The Petitioner testified that he "felt like [he] was coerced into [pleading guilty]." The Petitioner agreed that the trial court reviewed his constitutional rights with him at the guilty plea hearing.

The Petitioner testified that he requested discovery three or four times but that Counsel never provided it. Although he did not know her identity, the Petitioner testified that once he arrived at "Bledsoe" he spoke with a woman who told him he had Post Traumatic Stress Disorder. He said that this was the first that he learned of this diagnosis.

On cross-examination, the Petitioner testified that, in August 2017, he went "to the woods" the morning after he was "at the [office] with [the victim]." He hid in the woods for several days while wearing a GoPro to record statements and apologies to his family. The State played a portion of the GoPro video, and the Petitioner identified himself as the person speaking in the video. The Petitioner agreed that he stated in the video that he was "going out to the woods so that [he] could kill [him]self because [he] felt guilty about what [he] had done." The Petitioner denied that any of the apologies he made during the GoPro recordings related to the victim. The Petitioner said that he had a Beretta with him while in the woods but had not intended to use it to kill himself. He thought he would die of starvation and dehydration.

It was after the Petitioner "failed to kill [him]self" that he confessed to the detective. The Petitioner reiterated that he made up his confession to the detective to keep the victim from killing herself. He denied giving a similar confession to his daughter while hiding in the woods but stated "[w]hen she asked me that I thought I was dead anyway, didn't really matter, I should have been dead." He confirmed that his daughter was the victim's cousin.

About his conversation with his daughter, he clarified that his daughter was adamant about defending him and he told her "no." The Petitioner explained that he declined his daughter's support in defending him because, while hiding in the woods, he had been without water for four full days and "should have been dead." The Petitioner's daughter did not accept his answer and continued to argue. In an effort to end the discussion, he finally responded, "yes" when she asked if he had had sex with the victim. The Petitioner said "the same thing" occurred when he spoke with his friend "Kevin" about the victim's allegations.

4

The State called Counsel as a witness. Counsel, who had been practicing for thirty-one years in the field of criminal law, testified that he and another attorney represented the Petitioner. Counsel estimated that he met with the Petitioner six times but maybe as many as ten. Counsel reviewed the discovery with the Petitioner and believed the Petitioner had a good understanding of the State's evidence against him. Counsel filed several pretrial motions on the Petitioner's behalf.

The State's initial offer was for the Petitioner to "plead open with a sentencing hearing." Counsel stated that the State would have called three other witnesses to testify that they also had been sexually abused by the Petitioner. This testimony in addition to the fact that the Petitioner was in "a position of trust" with a history of criminal behavior placed him at risk for a sentence well above the minimum. The victim's parents, however, felt strongly that they did not want their child to testify about her sexual history which caused the State to make an offer involving a lesser included offense.

Counsel recalled speaking with Co-counsel about a mental evaluation but both believed that the Petitioner met the standard for competency. Counsel recalled the defense theory the Petitioner wanted to pursue, "that [the Petitioner] had falsely confessed to a detective, to his own daughter, and to his best friend so that . . . the victim would receive mental health treatment." Counsel stated he believed this defense to be "wildly implausible." When asked if he coerced the Petitioner to plead guilty, Counsel responded:

> No. I think we viewed our job as attempting to save [the Petitioner's] life. He was a man in his 50's who was facing in excess of 25-calendar years in prison and we hoped that we could resolve it in such a way that he would not die in prison. We believed the likelihood of conviction was extraordinarily high and that he would likely receive a sentence that would exceed his life. And when we obtained an offer [of] . . . approximately 18 years, that [ ] would give him the possibility of - - [g]etting out one day[.]

Counsel stated that he did not present the offer as merely an option but recommended that the Petitioner accept the offer based upon both his and Co-Counsel's experience. Counsel stated, "he didn't have a choice between good and bad options. He had a choice between bad and worse and that was due to the evidence."

On cross-examination, Counsel disagreed that the Petitioner had fifteen to twenty minutes to consider the State's offer to settle the case. Referencing emails, it appeared the Petitioner had several days to consider the offer.

The post-conviction court took the matter under advisement. In a subsequent order, the post-conviction court denied relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

On appeal, the Petitioner asserts that he received the ineffective assistance of counsel. He asserts that Counsel failed to properly prepare or meet with him. Further, the Petitioner asserts that his plea was not knowing or voluntary because he was not given adequate time to consider the State's offer and his attorneys coerced him into pleading guilty. The State responds that the Petitioner failed to prove his allegations by clear and convincing evidence and, therefore, the post-conviction court properly denied relief. We agree with the State.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

6

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). 1In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

## A. Ineffective Assistance of Counsel

The Petitioner asserts that Counsel failed to adequately communicate with the Petitioner thereby preventing development of a proper defense strategy. The State responds that the post-conviction court properly denied relief.

7

In the order denying relief, the post-conviction court made the following findings:

> The Court accredits the testimony of [Counsel], that he visited the Petitioner "six to ten times" in the Hill Detention Center to discuss the case and its facts. [Counsel] confirmed that discovery was received from the State and he had reviewed that material with the Petitioner. The Court notes in the plea agreement copy entered as an exhibit to the instant proceedings that the Petitioner not only signed it, but an attached, typewritten page clearly explained the possible sentences he faced. However, regarding the matter of discovery copy provision, the Petitioner has provided no proof, apart from his motion, that he did not receive discovery. The Court finds that the Petitioner has neither proved by clear and convincing evidence that he was not provided copies of his discovery or plea agreement, nor has he established how he was prejudiced by that belief.

The evidence does not preponderate against the post-conviction court's finding that Counsel met with the Petitioner multiple times and kept the Petitioner well informed. The Petitioner's case was handled by two experienced criminal defense attorneys who collaborated on various issues that arose during representation. Counsel met with the Petitioner between six and ten times, reviewed discovery, and filed pre-trial motions on the Petitioner's behalf. Counsel negotiated a plea agreement that included a lesser included offense with a shorter sentence than he could have received had the Petitioner been convicted at trial. The trial court accredited Counsel's testimony.

We conclude that the evidence showed that Counsel reviewed discovery, met with the Petitioner, and negotiated a reasonable settlement given the facts of the case. The Petitioner has not provided any evidence that, absent Counsel's alleged deficiency, he would have chosen to risk a much more significant sentence rather than plead to one lesser included offense with a shorter sentence. Accordingly, we conclude that the Petitioner has not shown that Counsel was deficient or that any alleged deficiency prejudiced him. He is not entitled to relief as to this issue.

### B. Involuntary Guilty Plea

The Petitioner asserts that he only had "15-20 minutes to consider the offer conveyed to him" by Counsel and that "he felt that he was coerced into pleading guilty." The State responds that the Petitioner failed to establish that his guilty plea was involuntary and unknowing. We agree with the State.

In the order denying relief, the post-conviction court made the following findings:

[The Petitioner] averred inadequate discussions with his attorney, including a range of punishment assessment, and possible mental illness. During the instant hearing, the Petitioner stated he was given "fifteen minutes" to make a decision about the plea agreement. This assertion was discredited where, by the record and in the instant hearing, the Court calculated the final plea offer was made to the Petitioner's counsel five days before acceptance, and some two weeks before the scheduled trial date. [Counsel] also testified as to the timeline established by email correspondence with the State. The copy exhibit of the plea agreement, as well as the original in the Court's own case file, included an additional typewritten page thoroughly detailing the possible sentences faced by the Petitioner.

At the post-conviction hearing, the Petitioner testified about a "PTSD" condition with which he had been diagnosed only subsequent to the offenses. Petitioner alleged this condition accounted for his decision to admit rape of a child to multiple persons, yet not actually having committed the crime. The Court discredits the Petitioner's claim that undiagnosed PTSD caused him sufficient duress and provoked admissions to particularly heinous crimes against a child. As well, the Petitioner failed to present witness or medical record testimony regarding the claimed mental diagnosis. Proof was not established on how the claimed mental condition generated a side effect of false admissions. While a diagnosis of PTSD could be considered mitigating evidence, the co-counsels were not remiss in failing to establish such a claim based on an unknown and undiagnosed condition. The Petitioner has failed to establish prejudice.

The Court considered the recorded GoPro statements made by the Petitioner. While these videos are not vital to denying the post-conviction relief sought, statements were memorialized that could easily be viewed as contrary to the Petitioner's reasoning for his admission to police, his daughter, and his best friend. The statements included:

Video 016330: "I want you to know that I did not. . . I didn't hurt her. Nothing was forced, it just happened."

Video 026330: It's the worse thing you could ever have done. "I messed up, oh sh_. I cannot forget the look on her face when she realized how far it had gotten. That poor girl. How in the heck can I have done that? But I did."

9

Video 036330: "I did it. I didn't stop it. I'm responsible." "How in the world could I have done that?"

The excerpts included above contradict the Petitioner's testimony that he willingly gave false confessions solely to get professional help for [the victim]. The Court does not find the Petitioner's instant claim to be credible where he states the victim was not "forced." "It," as in the sexual abuse, "was the worse thing you could ever have done." And the forthright admission words, "I did it."

From the transcribed record of the plea agreement, the Petitioner responded affirmatively to the Court's plea colloquy. "Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review." *Mitchell v. State*, No. W2014-00047-CCA-R3-PC, 2015 WL 153844, at *6 (Tenn. Crim. App. Jan. 12, 2015) (quoting *Boykin v. Alabama*, 395 U.S. 238, 244 (1969)). Before the Court accepted the Petitioner's plea, it conducted a standard plea colloquy and was satisfied with the responses. Therefore, the Court does not find any merit to the Petitioner's contention that the guilty plea was not entered into knowingly, voluntarily, and intelligently.

The evidence does not preponderate against the post-conviction court's findings. The Petitioner was provided several days to evaluate the State's offer for him to plead guilty to one lesser included offense rather than go to trial for four felony offenses with exponentially greater sentencing exposure. Counsel stated that he advised the Petitioner that he should take the offer in light of the evidence against the Petitioner, which included the Petitioner's admission of guilt to three different people, and the potential of a lengthier sentence if convicted on all counts. Furthermore, at the guilty plea hearing, the Petitioner testified to his understanding of the guilty plea and his willingness to enter the plea agreement with the State for a lesser included offense and reduced charges. Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id*. at 74.

The trial court accredited Counsel's testimony and the evidence shows that Counsel met with the Petitioner, advised him appropriately in light of the facts of the case, and negotiated for a reduced charge and sentence. The Petitioner testified at the guilty plea

10

hearing that he was competent and entered his plea freely.  Accordingly, we conclude that the Petitioner has failed to demonstrate that his plea was entered involuntarily.  He is not entitled to relief.

### III. Conclusion

Based on the foregoing, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE